IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ERICA STEWART                                                                                    PLAINTIFF

v.                                         No. 4:05CV00895 JLH

CONAGRA FOODS, INC.                                                                        DEFENDANT

**OPINION AND ORDER**

Erica Stewart alleges that ConAgra Foods, Inc., terminated her on the basis of her race and sex. ConAgra has moved for summary judgment. That motion is granted.

**I.**

A court should enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**II.**

ConAgra produces frozen food items at its Russellville plant where Stewart began working on March 8, 2004. At the time she was terminated on December 28, 2004, Stewart worked as an

extra line server, meaning that, on any given day, she was assigned to whichever production line needed her assistance. Stewart's job as line server required her, among other things, to keep her line stacked with product. Prior to her termination, various ConAgra supervisors counseled or disciplined Stewart for poor job performance on multiple occasions. Stewart informed the EEOC and later affirmed in her deposition that she ran out of product on the first day working under Victor Lama, a line supervisor, and apologized to him for doing so. In August, she was called to the office in connection with a situation involving another supervisor, John Freeman, but was not disciplined. In October, an incident occurred involving "various players" for which Stewart was not written up. In September, Deeanne Jones, a line supervisor, issued Stewart a written warning notice for sticking her hand in a rotary while the line was running and suspended her for three days. In November, Lama issued Stewart a final warning notice for "failure to keep the line satisfied at the stack-off station" and sent her home early. According to Jack Wilburn, the area production supervisor, Stewart had been orally counseled several times prior to this warning against letting the line run out of product. Wilburn revised the warning notice to state Stewart's violation as a "failure to perform assigned line service job duties to supervisor's satisfaction." Based on this incident, Wilburn disqualified Stewart from the extra line server position and reassigned her to an extra board processor position. Stewart grieved this notice through her union. At the grievance hearing, Stewart signed a last chance agreement in which she agreed that further job performance deficiencies would constitute cause for termination. In exchange, ConAgra reinstated Stewart to her position as extra line server. Wilburn asked Stewart if she needed additional training, but Stewart responded that she did not.

On December 21, after returning to her former position the day before, Stewart let her line run out of product. Unaware of the last chance agreement, Jones, Stewart's line supervisor that day,

2

intended to issue Stewart a written warning but, upon direction from Karla Groff in Human Resources, sent her instead to the front office. Stewart was suspended for three days pending further investigation. On December 28, Groff notified Stewart that she was terminated.

### III.

ConAgra argues that Stewart has failed to satisfy her burden of making prima facie showing of race or sex discrimination. According to ConAgra, it terminated Stewart because of her record of poor job performance and because she had breached her last chance agreement. It argues that, in addition to failing on her prima facie showing, Stewart produces no evidence that these reasons are pretextual or that race or sex was the true reason for its action. Finally, ConAgra asks this Court to dismiss the action because Stewart failed to join an indispensable party, the union.[1]

Absent direct evidence of discrimination, of which there is none in this case, the Court follows the familiar burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 688 (1973). *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720 (8th Cir. 2003). The Court need not decide in this case whether Stewart has satisfied her preliminary burden of demonstrating a prima facie showing of discrimination under *McDonnell Douglas*. ConAgra articulates legitimate, nondiscriminatory reasons for terminating Stewart and thus successfully rebuts any otherwise proven presumption, shifting the burden back to Stewart. *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1127 (8th Cir. 1998). In order to defeat summary judgment, Stewart bears the burden of showing that ConAgra's explanation is a mere pretext. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Stewart does so only if the evidence considered in its entirety (1) creates a genuine issue of fact that

---

[1] Because the Court grants summary judgment on the merits of Stewart's claim, it declines to rule on the indispensability of the union as a party.

ConAgra's proffered reasons are pretextual and (2) creates a reasonable inference that her race or sex or both motivated ConAgra's decision. *Id.*

The inquiry on pretext is whether ConAgra honestly believed that Stewart's performance on December 21 was deficient. *Johnson v. AT&T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005) (holding that the proper inquiry was not whether the defendant was factually correct in determining the offending conduct, but rather whether the defendant honestly believed that the plaintiff had committed the offending conduct). Stewart admits that ConAgra believed that her performance was deficient. Stewart denies that she should be blamed for her performance. She explains her own deficiencies by pointing to deficiencies in the line operation and equipment. However, Stewart admits that ConAgra believed when it fired her that it was terminating her for poor job performance. She testified at her deposition:

> Q: And I understand that you may disagree with them. But is it possible that they could have believed that was the reason that they were terminating you --
>
> A: For poor job performance.
>
> Q: -- for poor job performance?
>
> A: That's what their belief [sic]. Yes. I'm stating on their behalf, yes, that's what they felt they were doing.

Furthermore, the undisputed facts show that Stewart's performance had been an issue leading up to her termination. The last chance agreement Stewart signed on November 17 stated that another event of inadequate performance would be cause for termination. Stewart understood that agreement to place a condition on her reinstatement, specifically, that if there were any complaints or performance issues, she would be terminated. Stewart admits that on December 21, after the date of the agreement, she allowed product to fall off her line because she could not keep up, even if she

denies that she should be blamed for doing so.  Nothing about this evidence creates an inference that ConAgra's reason for terminating her was pretext for discrimination.

Stewart asserts that she was the only person singled out for her performance and that ConAgra took no action against Monica Lenhart and Trevor Houseby, two white employees who she "thought should have been side by side with me at the office."  "While evidence of disparate treatment can of course support an assertion of pretext, the employee or employees with whom a plaintiff wishes to be compared must have been similarly situated to the plaintiff in all relevant respects."  *Forrest*, 285 F.3d at 691-92.  On pretext, this is a rigorous test.  *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005).  Specifically, the "individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).  Stewart offers no evidence from which the Court can judge the relative similarity of these comparators and, thus, she creates no inference of discrimination by their reference.  *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (failure to identify supervisor who imposed allegedly less severe discipline on employees of a different class disallowed inference of pretext because "[w]hen different decision-makers are involved, two decisions are rarely 'similarly situated in all relevant respects'").

Stewart brings various allegations against Lama, Roberta Mackie, and Sue Brookhouser in her affidavit.  None of these assertions create an inference that race or sex factored into the decision to terminate her employment.  Stewart does not allege, nor does the record make clear, that any of these individuals were involved in the decision to terminate her employment.  Allegations against them then, even if true, do not tend to create an inference that Stewart was terminated because of her race or sex.  *Cf. Yates v. McDonnell Douglas*, 255 F.3d 546, 549 (8th Cir. 2001).

5

Finally, Stewart attaches to her response to summary judgment the affidavit of Heather Rogers, a legal assistant to Allen Law of Laws & Murdoch, P.A., one of Stewart's attorneys in this litigation. Insofar as this affidavit seeks to incorporate Rogers's synopsis of a conversation she had with Pamela Evans, a potential witness in this case, it constitutes inadmissible hearsay and will not be considered. FED. R. EVID. 801, 802; FED. R. CIV. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence . . . .").

## CONCLUSION

For the reasons contained herein, the Court grants summary judgment in favor of ConAgra.[2] Document #38. ConAgra's motion to strike is denied as moot. Document #49.

IT IS SO ORDERED this 10th day of August, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[2] The Court thanks Mr. Reid for accepting the appointment to represent Ms. Stewart. If Mr. Reid has incurred out-of-pocket expenses, he should see Exhibit A to Local Rule 83.6.